1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10   MONTY R. STANLEY,                    No.   14-cv-00035 JAM-EFB
     individually and doing
11   business as NORTH WEST
     SURFACING,
12                                        **ORDER GRANTING THE CITY OF ELK
                   Plaintiff,             GROVE"S MOTION TO DISMISS**
13
            v.
14
     BOBO CONSTRUCTION, INC.,
15   a California corporation;
     CITY OF ELK GROVE, and DOES 1
16   through 50, inclusive,

17                 Defendants.

18

19       This matter is before the Court on Defendant City of Elk

20   Grove's (the "City") Motion to Dismiss Plaintiff's Second

21   Amended Complaint ("SAC") (Doc. #21).  Plaintiff Monty R.

22   Stanley, individually and doing business as North West

23   Surfacing, ("Plaintiff") opposes the motion (Doc. #23) and the

24   City replied (Doc. #26).[1]  For the reasons set forth below, the

25   City's Motion to Dismiss Plaintiff's SAC is granted.

26   _____

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for June 18, 2014.

                                    1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff originally filed this action on September 9, 2013, in Sacramento County Superior Court (Doc. #1) against Bobo Construction, Inc., ("BCI") and the City (collectively "Defendants").  This action was removed to this Court on January 6, 2014, based on federal question jurisdiction, 28 U.S.C. § 1331.  Id.  On April 10, 2014, the Court granted BCI's Motion to Dismiss Plaintiff's fifth cause of action with leave to amend and granted the City's Motion to Dismiss Plaintiff's FAC with leave to amend.  Order, Doc. #18.  On April 28, 2014, Plaintiff filed his SAC, the operative complaint in this case, alleging six causes of action: (1) breach of contract as to BCI; (2) deprivation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983 as to Defendants; (3) common counts against BCI; (4) interference with contractual relations against the City—the Subcontract Between Plaintiff and BCI; (5) interference with contractual relations against Defendants—Contract with Freddis Paving; and (6) interference with prospective economic advantage against Defendants (Doc. #19).

According to the allegations in the SAC, the City awarded BCI a contract for a public works construction project, the Special Waste Collection Center and Disposal Lane Project ("Project") in May 2012.  SAC ¶¶ 6-7.  In or about May 2012, BCI and Plaintiff entered into a subcontract agreement, under which Plaintiff was to perform demolition work at the Project and haul debris off the Project site.  Id. ¶ 8.  After commencing work, Plaintiff and his employees encountered contaminants at the Project site.  Id. ¶ 9.  Defendants denied the presence of the

2

1  contaminants.  Id. ¶ 11.

2      Beginning in or about August 2012 and continuing through

3  September 21, 2012, the City and BCI discharged him as a

4  subcontractor because he complained about potentially hazardous

5  and toxic contaminants at the Project site and requested that

6  appropriate protective measures be taken.  Id. ¶ 19.  On August

7  10, 2012, the City served Plaintiff with a written notice, under

8  California Public Contract Code section 4107 ("Section 4107"),

9  of BCI's request for the City's consent to remove and replace

10  Plaintiff on the Project.  Id. ¶ 13.  On August 10, 2012,

11  Plaintiff served a written request for a hearing in response to

12  the written notice pursuant to Section 4107.  Id. ¶ 14.  The

13  hearing was scheduled for August 21, 2012, but was postponed to

14  allow for informal discussions.  Id.  On September 10, 2012, the

15  parties met to resolve the issue.  No further discussions were

16  held.  Id.

17      On or about August 31, 2013, Plaintiff presented a written

18  claim for economic damages to the City.  Id. ¶ 17.  On or about

19  February 19, 2014, Plaintiff presented an additional written

20  claim for economic damages against City.  Id. ¶ 18.

21

22                    II.   OPINION

23      A.   Judicial Notice

24      The City requests judicial notice of Plaintiff's two

25  government claims dated August 31, 2013, and February 19, 2014.

26  Government Claims, Ex. A-B, Request for Judicial Notice ("RJN"),

27  Doc. #21.  Courts may consider extrinsic evidence when the

28  plaintiff's claim depends on the contents of a document and the

3

1  parties do not dispute the authenticity of the document.  See,

2  e.g., Sherman v. Stryker Corp., 2009 WL 2241664, at *2 (C.D.

3  Cal. Mar. 30, 2009) (citing Lee v. City of Los Angeles, 250 F.3d

4  668, 688 (9th Cir. 2001), and Fed. R. Evid. 201).  Here,

5  Plaintiff refers to the government claims in the SAC and

6  Plaintiff does not dispute their authenticity.  Accordingly, the

7  Court grants the City's request for judicial notice.

8       B.   Discussion

9            1.   Section 4107

10      Preliminarily, the City argues that Plaintiff cannot sue it

11  for violation of Section 4107.  Plaintiff argues that the

12  Section 4107 allegations are part of his § 1983 claim.

13      Section 4107 "limits the right of the prime contractor to

14  make substitutions and the discretion of the awarding authority

15  to consent to substitutions" of subcontractors.  S. California

16  Acoustics Co. v. C. V. Holder, Inc., 71 Cal.2d 719, 726 (1969).

17  "The consequences of an unauthorized substitution can be severe

18  for the prime contractor: the subcontractor may sue the prime

19  contractor (but not the public entity) for damages."  Titan

20  Elec. Corp. v. Los Angeles Unified Sch. Dist., 160 Cal.App.4th

21  188, 203.

22      Although the City correctly asserts that Plaintiff may not

23  sue the City for damages under Section 4107, Plaintiff has not

24  alleged any cause of action for breach of Section 4107 against

25  it.  As Plaintiff points out, in the SAC, Plaintiff alleges that

26  the City violated his due process rights under the U.S.

27  Constitution while acting under Section 4107 to satisfy the

28  "under the color of law" requirement of § 1983 claims.  Further,

4

1  the City does not request any specific claim be dismissed based

2  on this argument.

3          2.   Intentional Tort Causes of Action

4      The City argues that Plaintiff's fourth, fifth, and sixth

5  causes of action (collectively "intentional tort claims") fail

6  as a matter of law because the City is immune pursuant to

7  Government Code section 815 ("Section 815") and Plaintiff fails

8  to establish vicarious liability.  In the opposition, Plaintiff

9  does not oppose the City's request that the sixth cause of

10 action against the City be dismissed.  Opp. at 10.

11     With respect to the fourth and fifth claims, Plaintiff

12 first argues that the City is vicariously liable for the

13 intentional torts of its employees.  Opp. at 5.  Although a

14 public entity is not liable for any injury except as provided by

15 statute under Section 815, under Government Code section 815.2

16 ("Section 815.2"), a public entity may be vicariously liable

17 under respondeat superior for acts or omissions of employees.

18 See Cal. Gov. Code §§ 815; 815.2.  "Under the doctrine of

19 respondeat superior, an employer is vicariously liable for his

20 employee's torts committed within the scope of the employment."

21 Perez v. Van Groningen & Sons, Inc., 41 Cal.3d 962, 967 (1986).

22 To determine the scope of employment, courts use a two-prong

23 test: whether "the employee's action is (1) either required or

24 incident to his duties or (2) could be reasonably foreseen by

25 the employer in any event."  Bailey v. Filco, Inc., 48

26 Cal.App.4th 1552, 1559 (1996).

27     The City argues that Plaintiff has failed to specify any

28 employees or actions.  However, under Section 815.2, it is not

1  "necessary in every case to identify the particular employee

2  upon whose act the liability of the public entity is predicated.

3  All that will be necessary will be to show that some employee of

4  the public entity tortiously inflicted the injury in the scope

5  of his employment under circumstances where he would be

6  personally liable."  Legislative Committee Comments, Cal. Gov't

7  Code § 815.2.  Even though particular employees do not have to

8  be identified, Plaintiff has failed to provide any specific

9  factual allegations concerning an employee or employees of the

10  City responsible for the alleged tortious acts.  Generally,

11  Plaintiff alleges that the City acted "through one or more

12  authorized officers of [the] City charged with the supervision

13  of the construction of the Project," (SAC ¶ 25), but does not

14  allege any underlying actions.

15      Second, Plaintiff argues that the City is vicariously

16  liable because the City and BCI conspired to commit the

17  underlying tortious acts, citing Berg & Berg Enterprises, LLC v.

18  Sherwood Partners, Inc., 131 Cal.App.4th 802, 823 (2005).  In

19  Berg, the court held the civil conspiracy is a "legal doctrine

20  that imposes liability on persons who, although not actually

21  committing a tort themselves, share with the immediate

22  tortfeasors a common plan or design in its perpetration."  Id.

23  Further, "it is merely a mechanism for imposing vicarious

24  liability; it is not itself a substantive basis for liability."

25  Id.  To establish a conspiracy, "a plaintiff must allege (1)

26  that the defendant had knowledge of and agreed to both the

27  objective and the course of action that resulted in the injury,

28  (2) that there was a wrongful act committed pursuant to that

6

1  agreement, and (3) that there was resulting damage."  Id.

2  (numbering added).

3      In the reply, the City argues that Berg does not apply in

4  this case because Berg involved a conspiracy between a principal

5  and an agent, not an independent contractor.  Reply at 3 n. 1.

6  Nevertheless, assuming that Berg applies, Plaintiff has failed

7  to allege sufficient facts.  In the SAC, Plaintiff alleges that

8  the City and BCI conspired to remove him from the Project and

9  induced other parties not to buy construction material from

10  Plaintiff to "eliminate Plaintiff as a source of the complaints

11  regarding the presence of contaminants on the Project."  SAC ¶¶

12  12-14; 25.  However, Plaintiff's conspiracy allegations are

13  legal conclusions.  No facts to show the formation or operation

14  of a conspiracy have been alleged.  See State ex rel. Metz v.

15  CCC Info. Servs., Inc., 149 Cal.App.4th 402, 419 (2007)(stating

16  that "[i]n order to state a cause of action based upon a

17  conspiracy theory the plaintiff must allege the formation and

18  operation of the conspiracy, the wrongful act or acts done

19  pursuant to it, and the damage resulting from such acts.  . . .

20  In making such allegations bare legal conclusions, inferences,

21  generalities, presumptions, and conclusions are insufficient")

22  (citations omitted).

23      Therefore, Plaintiff has failed to allege vicarious

24  liability. Because Plaintiff has not indicated any other facts

25  that he may be able to allege to pursue this cause of action,

26  and he has had two opportunities to properly plead these claims,

27  further amendment is futile and these claims are dismissed with

28  prejudice.  The Court also does not need to consider the City's

1    remaining arguments on these causes of action.

2                    3.    42 U.S.C. § 1983

3        In its previous Order granting the City's motion to

4    dismiss, the Court held that Plaintiff did not allege any facts

5    to establish that there was a policy as required under Monell.

6    Order at 8-9.  The City once again moves to dismiss Plaintiff's

7    second cause of action for violation of 42 U.S.C. § 1983, in

8    part, because Plaintiff failed to allege sufficient facts to

9    establish the requisite elements of a claim under Monell v.

10   Department of Social Services, 436 U.S. 658, 690-91 (1978).

11   Plaintiff argues that the City had final policy-making authority

12   to remove him under Section 4107.

13       To prevail in a civil action against a local governmental

14   entity, a plaintiff must establish "(1) that he possessed a

15   constitutional right of which he was deprived; (2) that the

16   municipality had a policy; (3) that this policy 'amounts to

17   deliberate indifference' to the plaintiff's constitutional

18   right; and (4) that the policy is the 'moving force behind the

19   constitutional violation.'"  Oviatt By & Through Waugh v.

20   Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of

21   Canton v. Harris, 489 U.S. 378, 389-91 (1989)).  For the second

22   element, a single decision may constitute an act of official

23   government policy.  Pembaur v. City of Cincinnati, 475 U.S. 469,

24   480 (1986).  However, "[m]unicipal liability attaches only where

25   the decisionmaker possesses final authority to establish

26   municipal policy with respect to the action ordered."  Id. at

27   481.

28       In the SAC, Plaintiff alleges that the decision to remove

                                  8

1  Plaintiff was a deliberate chosen course of action by the City

2  as the "awarding authority" under Section 4107, and therefore,

3  the City is the final decision making authority under Section

4  4107.  SAC ¶ 28.  The City argues that Plaintiff has nonetheless

5  failed to identify a final policymaker, citing Gillette v.

6  Delmore, 979 F.2d 1342 (9th Cir. 1992).  In Gillete, the Ninth

7  Circuit held that the fire chief, who fired the plaintiff, was

8  not a final policymaker because his discretionary authority to

9  hire and fire employees, standing alone, was "not sufficient to

10  establish a basis for municipal liability."  Id. at 1350.  The

11  court also noted the fact that the "City Charter and ordinances

12  grant authority to make City employment policy only to the City

13  Manager and the City Council."  Id.  Without evidence that the

14  fire chief made policy, the court found he was not a final

15  policymaker.  Id.

16       In this case, Plaintiff has not identified any individual

17  actors; at most, Plaintiff alleges that decision "was made by

18  one or more of its duly authorized officers vested by the City

19  with final decision-making authority to remove and replace

20  Plaintiff."  SAC ¶ 28.  Although there is no requirement that a

21  decisionmaker be identified by name, sufficient facts must be

22  alleged to allow the Court to determine whether the official or

23  officials responsible for establishing final policy made a

24  deliberate choice to follow a course of action among various

25  alternatives.  Gillette, 979 F.2d at 1347.  Because the

26  allegations are conclusory and lack concise factual allegations

27  describing the events that underlie Plaintiff's claim, his claim

28  is deficient.  See SAC ¶¶ 25-28.

9

1    Accordingly, the Court dismisses Plaintiff's § 1983 claim

2  against the City.  Because Plaintiff has had two opportunities

3  to allege a Monell claim, the Court does not grant leave to

4  amend. Furthermore, the Court need not address the City's

5  remaining arguments on this claim.

6

7                         III.   ORDER

8    For the reasons set forth above, the Court GRANTS the

9  City's Motion to Dismiss Plaintiff's SAC without leave to amend.

10  This case will proceed against the remaining Defendant.

11    IT IS SO ORDERED.

12  Dated: July 30, 2014

13                                          _____

14                                          JOHN A. MENDEZ,
                                            UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              10